UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELA MARIE DUSHARM,

                    Plaintiff,

v.                                           7:14-CV-1562
                                             (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

APPEARANCES:                                 OF COUNSEL:

CONBOY, MCKAY, BACHMAN,                       PETER L. WALTON, ESQ.
& KENDALL, LLP.
  Counsel for Plaintiff
407 Sherman St.
Watertown, NY 13601

U.S. SOCIAL SECURITY ADMIN.                   JOSHUA KERSHNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 17.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Angela Marie

Dusharm ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 8, 16.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on January 22, 1973. (T. 148.) She completed high school. (T. 178.) Generally, Plaintiff's alleged disability consists of migraines, chronic neck pain, and chronic back pain. (*Id.*) Her alleged disability onset date is August 13, 2011. (T. 64.) Her date last insured is December 31, 2016. (T. 38-39.) She previously worked as registration clerk and medical support assistant. (T. 179.)

### B.    Procedural History

On August 13, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 64.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 26, 2013, Plaintiff appeared before the ALJ, Marie Greener. (T. 36-63.) On July 25, 2013, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 18-35.) On October 31, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 23-31.) First, the ALJ found that Plaintiff met the insured status

requirements through December 31, 2016 and Plaintiff had not engaged in substantial

gainful activity since August 13, 2011.  (T. 23.)  Second, the ALJ found that Plaintiff had

the severe impairments of degenerative disc disease of the cervical spine status post

discectomy and fusion surgery and degenerative disc disease of the lumbar spine.  (*Id.*)

The ALJ determined that Plaintiff's transient ischemic attack ("TIA") and Chiari

malformation were non-severe impairments.  (T. 24.)  The ALJ determined that

Plaintiff's depression and anxiety were not medically determinable impairments.  (*Id.*)

Third, the ALJ found that Plaintiff did not have an impairment that meets or medically

equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P,

Appendix. 1.  (T. 25.)  Fourth, the ALJ found that Plaintiff had the residual functional

capacity ("RFC") to perform a full range of sedentary work.  (*Id.*)  Fifth, the ALJ

determined that Plaintiff was capable of performing her past relevant work as a

registration clerk and medical support assistant.  (T. 29.)  In the alternative, the ALJ

determined that there were jobs that existed in significant numbers in the national

economy Plaintiff could perform.  (T. 30.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff essentially makes four separate arguments in support of her motion for

judgment on the pleadings.[1]  First, Plaintiff argues the ALJ erred in her step two

determination.  (Dkt. No. 8 at 11-13 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the

ALJ erred in her evaluation of the medical evidence in the record.  (*Id.* at 13-18.)  Third,

Plaintiff argues the ALJ failed to properly assess Plaintiff's past relevant work at step

---

[1]      Plaintiff's brief outlines six specific arguments, however, for ease of analysis the
arguments will be address in a consolidated fashion.

four.  (*Id*. 18-21.)  Fourth, and lastly, Plaintiff argues the ALJ erred in her credibility assessment.  (*Id*. at 21-24.)

### B. Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues the ALJ's step two determination was proper.  (Dkt. No. 16 at 6-8 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ properly assigned weight to the opinions in the record.  (*Id*. at 8-14.)  Third, Defendant argues the ALJ properly evaluated Plaintiff's credibility.  (*Id*. at 14-16.)  Fourth, and lastly, Defendant argues the ALJ properly found that Plaintiff could perform work that existed in significant numbers in the national economy.  (*Id*. at 16-17.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this

sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct.

2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

### A.    The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine

whether Plaintiff had a severe impairment that significantly limited her physical or

mental ability to do basic work activities. *See* C.F.R. §§ 404.1520(c), 416.920(c).

Plaintiff bears the burden of presenting evidence establishing severity. *Miller v. Comm'r*

*of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008);

*see also* 20 C.F.R. §§ 404.1512(a), 416.912(a).

Although the Second Circuit has held that this step is limited to "screen[ing] out

de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere

presence of a disease or impairment, or establishing that a person has been diagnosed

or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F.Supp.3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

At step two the ALJ determined Plaintiff had the severe impairments of degenerative disc disease of the cervical spine and degenerative disc disease of the

lumbar spine. (T. 23.) In her discussion of Plaintiff's degenerative disc disease of the cervical spine, the ALJ noted treatment observations made by Plaintiff's neurosurgeon which indicated Plaintiff's cervical spine impairment caused her headaches and neck pain. (*Id.*)

Plaintiff argues the ALJ erred in her step two analysis because she failed to consider Plaintiff's migraines as an independent impairment. (Dkt. No. 8 at 12 [Pl.'s Mem. of Law].) However, any error the ALJ may have made at step two was harmless, because the ALJ determined Plaintiff had severe impairments at step two and because the ALJ clearly considered Plaintiff's headaches elsewhere in her decision.

The ALJ discussed Plaintiff's migraines throughout her decision. The ALJ summarized Plaintiff's medical treatment surrounding her migraines and the ALJ noted that the medical records indicated Plaintiff's migraines were controlled with medication. (T. 27.) Therefore, the ALJ did not in her step two analysis and determination, because the ALJ found severe impairments at step two and the ALJ considered Plaintiff's headaches throughout her decision.

## B. The ALJ's Evaluation of the Medical Opinions in the Record and RFC Determination

Plaintiff's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making an RFC determination, the ALJ must consider all of Plaintiff's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. Plaintiff's RFC is not the least she can do despite her limitations or restrictions, but the most. SSR 96-8p (S.S.A. July 2, 1996).

In making her RFC determination, the ALJ relied on the medical opinion evidence in the record; specifically, the ALJ afforded "little evidentiary weight" to the opinion of Plaintiff's treating source, Lisa Trickey, PA; the ALJ afforded "little weight" to the opinion of Plaintiff's treating physician, Walter Hall, M.D.; and "some weight" to the opinion of consultative examiner, Elke Lorensen.  (T. 28-29.)

Plaintiff argues that the ALJ erred in her RFC determination because she did not adequately assess the medical opinion evidence in the record.  (Dkt. No. 8 at 13-18 [Pl.'s Mem. of Law].)  Specifically, Plaintiff argues the ALJ erred in the weight afforded to Plaintiff's treating physician, Dr. Hall and consultative examiner Dr. Lorensen.  (Id. at 14-15.)

### i.)     Treating Physician, Dr. Hall

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion.  *Id.*, *see also*

SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

On December 6, 2012, Dr. Hall completed a medical source statement. (T. 354-357.) Therein Dr. Hall opined Plaintiff had the following exertional limitations. Dr. Hall opined Plaintiff could lift and carry less than ten pounds occasionally and could lift and carry less than ten pounds frequently. (T. 354.)[2] Dr. Hall opined Plaintiff could stand and/or walk less than two hours in an eight-hour workday. (*Id.*) Dr. Hall opined Plaintiff could sit less than about six hours in an eight-hour workday. (T. 355.) Dr. Hall opined Plaintiff's ability to push and/or pull was limited in her upper and lower extremities. (*Id.*) When asked what medical/clinical findings support his conclusions, Dr. Hall stated that Plaintiff "had both cervical spondylosis and lumbar spondylosis with pain in the neck and low back." (*Id.*)

Dr. Hall also provided non-exertional limitations. Dr. Hall opined that Plaintiff should never climb, balance, kneel, crouch, crawl, or stoop due to her cervical and lumbar spondylosis. (T. 355.) Dr. Hall opined Plaintiff was limited in reaching in all directions, but unlimited in her ability to handle, finger and feel. (T. 356.) Dr. Hall opined Plaintiff could occasionally reach. (*Id.*) Dr. Hall opined Plaintiff had no visual or communicative limitation, nor did Plaintiff have any environmental limitations. (T. 356-357.)

The ALJ afforded Dr. Hall's opinion "little weight," reasoning that he had not seen Plaintiff since November of 2012 and he did not treat Plaintiff for her back impairment. (T. 28.) Plaintiff's neck impairment improved after surgery, and clinical findings prior to

---

[2] The medical source statement defines occasionally as "very little up to one-third of an 8-hour workday" and defines frequently as "occurring one-third to two-thirds of an 8-hour workday." (T. 354.)

surgery did not support Dr. Hall's limitations. (*Id.*) Specifically, the ALJ determined Dr. Hall's limitations were inconsistent with observations made by Dr. Lorensen and inconsistent with Plaintiff's reported activities of daily living. (*Id.*)

Plaintiff argues the ALJ erred in concluding Dr. Hall's statement was not contemporaneous with treatment notes, erred in concluding Dr. Hall did not treat Plaintiff's back pain, and the ALJ failed to follow the factors outlined in the Regulations for evaluating the opinion of a treating physician. (Dkt. No. 8 at 14-16 [Pl.'s Mem. of Law].) Defendant counters that the ALJ's weight determination was proper because the medical evidence in the record supports the ALJ's reasoning for affording Dr. Hall's opinion "little weight." (Dkt. No. 16 at 12 [Def.'s Mem. of Law].)

The ALJ did afford less weight to Dr. Hall's opinion because it wasn't contemporaneous to treatment notes, as Plaintiff argues. (Dkt. No. 8 at 14-16 [Pl.'s Mem. of Law].) The ALJ gave less weight to Dr. Hall's opinion because he had not treated Plaintiff since 2012, approximately a seven month gap between treatment and the hearing. (T. 28.) Under the Regulations an ALJ is permitted to take into account the frequency, length, nature and extent of treatment. 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i).

Plaintiff also argues that contrary to the ALJ's findings, Dr. Hall treated Plaintiff for her back impairment. (Dkt. No. 8 at 14-15 [Pl.'s Mem. of Law].) Under the Regulations an ALJ is permitted to take into account a treating physician's specialty and well as the nature of the treatment relationship. 20 C.F.R. §§ 404.1527(c)(2)(i), 404.1527(c)(2)(iv), 416.927(c)(2)(i), 416.927(c)(2)(iv). In support of her argument Plaintiff cites to treatment notes which indicated Plaintiff's history of back pain (T. 328),

an assessment from a nurse practitioner who compiled Plaintiff's medical history and physical exam report prior to Plaintiff's cervical discectomy (T. 324-326), and treatment notations indicating a history of lumbar spondylosis and referral to Dr. Mesfin for further treatment of her lumbar impairment (T. 350). Although Dr. Hall, or his colleagues, noted Plaintiff's medical history of lumbar impairments, notation of an impairment does not equate with treatment.

The ALJ followed the factors outlined in the Regulations in her evaluation of Dr. Hall's opinion. As discussed herein, the ALJ concluded Dr. Hall had not treated Plaintiff since late 2012 and Dr. Hall did not treat Plaintiff for her back impairment, which was proper under 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). Further, the ALJ reasoned Dr. Hall's opinion was inconsistent with clinical findings prior to Plaintiff's cervical surgery and inconsistent with findings that Plaintiff's cervical impairment improved after surgery. (T. 28.) The ALJ's findings here were proper under 20 C.F.R. §§ 404.1527(c)(2)(ii)-(iii), 416.927(c)(2)(ii)-(iii). Where an ALJ's reasoning and adherence to the Regulations was clear, she was not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). Therefore, the ALJ properly adhered to the Regulations in evaluating Dr. Hall's medical source statement.

Plaintiff also argues the ALJ substituted her own lay opinion for that of medical opinion evidence in the record and failed to cite medical evidence in support of the

weight afforded to Dr. Hall's opinion.  (Dkt. No. 8 at 17-18 [Pl.'s Mem. of Law].)

However, contrary to Plaintiff's assertion, the ALJ specifically cited to medical evidence

in the record which the ALJ determined was inconsistent with Dr. Hall's limitations, such

as Dr. Lorensen's findings.  (T. 28.)  Therefore, for the reasons stated herein, and in

Defendant's brief, the ALJ did not err in her evaluation of Dr. Hall's opinion.

### ii.)    Consultative Examiner, Elke Lorensen, M.D.

The relevant factors considered in determining what weight to afford an opinion

include the length, nature and extent of the treatment relationship, relevant evidence

which supports the opinion, the consistency of the opinion with the record as a whole,

and the specialization (if any) of the opinion's source.  20 C.F.R. §§ 404.1527(c)(1)-(6),

416.927(c)(1)-(6).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining

and non-examining State agency medical consultants, since such consultants are

deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§

404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and

416.927(f)(2); *see Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL

2776978 at *4 (N.D.N.Y. June 7, 2010) (an ALJ "is entitled to rely upon the opinions of

both examining and non-examining State agency medical consultants," particularly

where the consultant's opinion is supported by the weight of the evidence), *see also*

*Leach ex. Rel. Murray v. Barnhart,* No. 02 Civ. 3561, 2004 WL 99935, at 9

(S.D.N.Y.Jan.22, 2004) ("State agency physicians are qualified as experts in the

evaluation of medical issues in disability claims. As such, their opinions may constitute

substantial evidence if they are consistent with the record as a whole.").

On March 29, 2012, Plaintiff underwent a consultative examine performed by Dr. Lorensen.  (T. 300-304.)  Dr. Lorensen took a medical history, performed a physical examination, and provided a medical source statement.  During her physical examination, Dr. Lorensen observed that Plaintiff appeared in no acute distress, had an abnormal gait, and limped on right leg.  (T. 302.)  Plaintiff informed Dr. Lorensen that she was unable to walk on her heels and toes, and could not squat.  (*Id.*)  Dr. Lorensen noted Plaintiff used no assistive devices, was able to change for the exam, and was able to rise from her chair without difficulty.  (*Id.*)

Dr. Lorensen performed a musculoskeletal exam.  Dr. Lorensen noted Plaintiff had full flexion, extension, and rotary movement in her cervical spine.  (T. 302.)  Dr. Lorensen noted Plaintiff had reduced range of motion in her lumbar spine.  (*Id.*)  Dr. Lorensen observed Plaintiff had negative straight leg raises.  (*Id.*)  Dr. Lorensen observed Plaintiff had reduced range of motion in her shoulders, reduced range of motion in her elbows, and full range of motion in her wrists.  (T. 303.)  Dr. Lorensen noted reduced range of motion in Plaintiff's hips and knees.  (*Id.*)  She noted Plaintiff's joints were stable, nontender with no redness, heat, swelling, or effusion.  (*Id.*)

Dr. Lorensen performed a neurologic exam.  Therein, she observed Plaintiff had decreased sensation to light tough and sharp touch in her left leg.  (T. 303.)  Dr. Lorensen noted Plaintiff had full sensation in her right leg and both upper extremities.  (*Id.*)  Dr. Lorensen noted Plaintiff had 4/5 strength in her left upper and left lower extremities and full strength in her right upper and right lower extremities.  (*Id.*)

In a medical source statement, Dr. Lorensen opined Plaintiff had "severe restrictions for ambulating and climbing stairs . . . [m]oderate restrictions for pushing,

pulling, and reaching with the left arm." (T. 304.) Dr. Lorensen opined Plaintiff should avoid heights and operating machinery. (*Id.*)

The ALJ afforded Dr. Lorensen's opinion "some weight." (T. 29.) However, the ALJ afforded no weight to Dr. Lorensen's opinion that Plaintiff should avoid heights and operating machinery. (*Id.*)[3]

Plaintiff appears to take issue with the ALJ affording weight to a consultative examiner who only observed Plaintiff on one occasion and did not review the medical evidence in the record. (Dkt. No. 8 at 15 [Pl.'s Mem. of Law].) Plaintiff further argues the ALJ erred in rejecting Dr. Lorensen's opinion that Plaintiff should avoid heights and operating machinery. (*Id.* at 15.) Defendant counters the record supported the ALJ's assignment of weight to Dr. Lorensen's opinion. (Dkt. No. 16 at 9-12 [Def.'s Mem. of Law].)

First, the elements of a complete consultative examination do not require that the examiner review all, or any, medical evidence in the record. 20 C.F.R. § 404.1519n(b)-(c); *see also*, *Harper v. Comm'r of Soc. Sec.,* No. 08-CV-3803, 2010 WL 5477758, at *4 (E.D.N.Y. Dec. 30, 2010) (Commissioner was not required to provide plaintiff's current disability status to medical examiner). Therefore, the ALJ did not commit legal error in relying on a consultative examiner's opinion where the examiner did not review the medical evidence in the record, because a consultative examiner is not required to review the record in order to provide a complete examination. Second, the ALJ reasoned the medical record did not support Dr. Lorensen's opinion that Plaintiff avoid

---

[3] Of note, although the ALJ afforded Dr. Lorensen's opinion "some weight," it appears from the ALJ's RFC determination limiting Plaintiff to sedentary work, that the ALJ adopted Dr. Lorensen's opinion that Plaintiff had "severe" restrictions for walking and "moderate" restrictions for pushing, pulling, and reaching with the left arm. (T. 304.)

heights and operating machinery. (T. 29.) Further, any error in this regard would be harmless.

In general, few occupations in the unskilled sedentary occupational base require work in environments with unusual hazards. A limitation to avoid machinery would not significantly erode the occupational base for unskilled sedentary work. As outlined in SSR 96-9p, "the hazards defined in the SCO are considered unusual in unskilled sedentary work. They include: moving mechanical parts of equipment, tools, or machinery. . .Even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base." SSR 85-15 states "[s]urroundings which an individual may need to avoid because of impairment include . . . recognized hazards such as unprotected elevations and dangerous moving machinery. . . A person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exist at all exertional levels." A limitation to avoid heights and machinery would not significantly erode the occupational base for unskilled sedentary work and any error the ALJ may have made in failing to include these limitations in her RFC determination would constitute harmless error.

Therefore, for the reasons stated herein and in Defendant's brief, the ALJ did not err in her evaluation of Dr. Hall's medical source opinion and the ALJ did not err in her evaluation of Dr. Lorensen's opinion.

**iii.)     The ALJ's RFC Determination**

Plaintiff argues the ALJ erred in her RFC analysis because the ALJ "select[ed] certain physician observations and us[ed] those in isolation" and failed to account for Plaintiff's migraines.  (Dkt. No. 8 at 19 [Pl.'s Mem. of Law].)  Plaintiff also argues the ALJ erred in her evaluation of Plaintiff's past relevant work.  (*Id.* at 20.)

As stated herein, the ALJ did not err in her evaluation of the medical opinion evidence in the record.  To be sure, administrative law judges are entitled to resolve conflicts in the record, but their discretion is not so wide as to permit them to pick and choose only evidence that supports a particular conclusion. *See Smith v. Bowen,* 687 F.Supp. 902, 904 (S.D.N.Y.1988) (citing *Fiorello v. Heckler,* 725 F.2d 174, 175–76 (2d Cir.1983)); *see also Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir.2011); *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir.2004).  Here, there is no indication from the record that the ALJ impermissibly relied on only portions of the record that supported her conclusion.  The ALJ thoroughly discussed the medical opinion evidence in the record and provided adequate reasoning to support her weight determinations. Therefore, the ALJ did not "cherry pick" the record.

The ALJ thoroughly discussed Plaintiff's headaches throughout her decision. The ALJ determined, based on medical evidence in the record, that Plaintiff's headaches were generally controlled with medication.  (T. 27.)  Although Plaintiff provides citations from the record documenting Plaintiff's struggle with migraines, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault*

*v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Although Plaintiff cited to evidence in the record regarding her migraines in support of her position, a reasonable factfinder could still have reached the ALJ's conclusions.

Plaintiff argues the ALJ erred in her step four determination that Plaintiff could perform her past relevant work as a registration clerk and medical support assistant because the ALJ failed to properly assess Plaintiff's RFC. (Dkt. No. 8 at 20 [Pl.'s Mem. of Law].) Plaintiff specifically argues the ALJ erred in speculating that Plaintiff overstated the amount of weight she lifted during her employment. (*Id.*) However, as stated in Defendant's brief (Dkt. No. 16 at 16-17), any error in classifying Plaintiff's past relevant work was harmless because the ALJ also concluded that a significant number of jobs existed in the national economy that Plaintiff could perform given her age, education, work experience, and RFC (T. 30).

### C. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work.  Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).  Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms was not entirely credible.  (T. 26.)  In making her determination the ALJ relied on objective medical evidence, Plaintiff's testimony regarding her symptoms, Plaintiff's

treatment history including medication, Plaintiff's activities of daily living, and Plaintiff's application for unemployment benefits. (T. 26-28.)

Plaintiff argues the ALJ mischaracterized her activities of daily living. (Dkt. No. 8 at 22-23 [Pl.'s Mem. of Law].) In her decision, the ALJ discussed Plaintiff's activities of daily living which she ultimately determined where inconsistent with Plaintiff's alleged limitations. (T. 28.) Plaintiff reported she could cook, clean, shop, take care of her personal hygiene, watch television, listen to the radio, read, walk, drive a car, use a computer, and socialize. (T. 28, 51-53, 188-191, 301.) "The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence." *Morris v. Comm'r of Soc. Sec.,* No. 5:12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014). Here, the ALJ properly concluded that Plaintiff's activities of daily living did not support her allegations that her symptoms were disabling.

Plaintiff argues the ALJ erred in relying on Plaintiff's application for unemployment benefits in making her credibility determination. (Dkt. No. 8 at 22-23 [Pl.'s Mem. of Law].) However, the ALJ did not err in her evaluation of Plaintiff's application for unemployment benefits. Several courts in this Circuit have concluded that the collection of unemployment benefits during the period of alleged disability was properly considered by an ALJ when assessing a plaintiff's credibility. *See Felix v. Astrue,* 11-CV-3697, 2012 WL 3043203, at *10 (E.D.N.Y. July 24, 2012) ("Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that he was ready, willing, and able to work

during the time period for which he claims disability benefits as adverse factors in the ALJ's credibility determination."); *Plouffe v. Astrue,* 3:10-CV-1548, 2011 WL 6010250, at *22 (D.Conn. Aug.4, 2011) (quoting from August 9, 2010 Social Security Administration Memorandum to the effect that: '[R]eceipt of unemployment benefits does not preclude the receipt of Social Security disability benefits[,]' but rather, 'is only one of the many factors that must be considered in determining whether the claimant is disabled.'); *Jackson v. Astrue,* 1:05-CV-01061, 2009 WL 3764221, at *8 (N.D.N.Y. Nov.10, 2009) ("Accordingly, the court finds that although plaintiff's filing for and receipt of unemployment benefits while claiming to be disabled is not proof-positive that plaintiff was no longer disabled, the ALJ properly considered plaintiff's claim for unemployment benefits when assessing plaintiff's credibility.").

The ALJ did not determine that Plaintiff's application of unemployment benefits was "proof positive" that she was not disabled, the ALJ considered Plaintiff's claim for unemployment as part of her overall credibility assessment. Further, in support of her argument that the ALJ erred in considering her application for unemployment benefits, Plaintiff notes that she was not eligible for benefits. (Dkt. No. 8 at 23 [Pl.'s Mem. of Law].) However, Plaintiff was ineligible for benefits because she did not have enough work credits. (T. 162.) Ineligibility due to lack of work credits does not change Plaintiff's assertion that she was ready, willing, and able to work. Therefore, the ALJ did not err in taking into consideration Plaintiff's receipt of unemployment benefits.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have

**FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.

Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated:          March 3, 2016

_____

William B. Mitchell Carter
U.S. Magistrate Judge